PER CURIAM.
Plaintiff, John B. Burdell, appeals from a judgment based on a directed verdict granted in favor of the defendant, Reginald R. Carpentier. We affirm.
Burdell sued Carpentier after Burdell suffered injuries resulting from an allegedly defective condition existing in a house trailer which he had leased from Carpen-tier. Burdell’s complaint contained three counts sounding in tort and one in contract. The trial court granted Carpentier’s motion for directed verdict on all four counts. Burdell appeals only as to the granting of the directed verdict against his contract count, which charges a breach of an agreement or contract to repair. The trial court directed the verdict on the contract claim because it determined that there was no evidence of consideration for the landlord’s alleged agreement to make repairs to the leased premises.
The issue is whether there was a scintilla of evidence of any consideration for an alleged oral agreement by landlord Carpen-tier to repair the premises leased by Bur-dell. If so, then the trial court erred in directing the verdict for Carpentier on the contract count.
The evidence produced at trial was as follows: on August 19, 1982, Burdell entered into a lease agreement whereby he leased Trailer H at Wilmer Oaks Trailer Park from Carpentier. Burdell lived in that trailer continuously from August 19, 1982, until the time of this accident.
The lease agreement provided for a week-to-week tenancy. The only provision relative to termination of the tenancy was a requirement for a five-day notice by a tenant prior to his moving out. Under this lease, Carpentier, the landlord, did not assume any responsibility or liability for making repairs to the trailer.
Immediately upon occupying the trailer in August 1982, Burdell inspected the trailer with Carpentier. No defects or problems with the trailer were found. Burdell testified that sometime around the beginning of December 1982 he noticed a small leak coming from the commode and running down to the floor. He testified that the condition worsened and that shortly before Christmas he told Carpentier that there was a potential problem with some water running onto the floor. However, at the time of their conversation, Burdell testified, he could see no real damage. Bur-dell testified that Carpentier said he would look at it and repair it.
Burdell testified on direct examination that he talked with Carpentier about the leaking commode again shortly after Christmas. The alleged response of Car-pentier was that he would try to repair it or would get around to repairing it after he got back from his vacation. Upon being confronted with his deposition taken in April 1984, Burdell admitted that he had only once brought it to the attention of Carpentier that there was a leak, and that it was approximately two weeks prior to his injury. Burdell also testified that he did not press Carpentier about the leak because he was not particularly concerned about it.
On January 10, 1983, Burdell took a bath in the bathroom of the trailer; he got out of the tub and sat down on the edge of the commode to dry his feet. At that time, the commode gave way and fell over, causing Burdell to be thrown to the floor. The commode fell on his back, resulting in his sustaining a herniated or ruptured disc.
*263 Burdell filed this lawsuit on January 9, 1984. Burdell alleged, among other things, that Carpentier had entered into an agreement with Burdell whereby Carpentier promised to repair the defective commode, but that Carpentier had breached that agreement by failing to repair the commode, and that that breach proximately caused Burdell’s injuries.
“A contract or covenant to repair must be supported by a consideration.... [A] promise to repair, made by a landlord to his tenant during the tenancy, with no other consideration than such tenancy, is a nudum pactum, without consideration, and cannot be enforced, as is such a promise by the landlord to a purchaser of a lease after the purchase has been consummated.”
51 C.J.S. Landlord & Tenant § 368(1) (1968).
This Court in Dunson v. Friedlander Realty, 369 So.2d 792 (Ala.1979), addressed a similar contract action which concerned an alleged agreement to repair the premises leased by the plaintiff. There, as in the present case, the lease did not contain a covenant requiring the landlord to repair the premises. At issue was whether the allegations of the plaintiffs complaint were sufficient to withstand a motion to dismiss. This Court noted that it was alleged that the tenant threatened to terminate the rental agreement because of a hazardous condition and that based upon that threat the landlord promised and agreed to remedy the dangerous defect or condition. In that case, this Court held the allegations to state a cause of action and to withstand a motion tb dismiss. In reaching that conclusion, we relied on and quoted from Adler v. Miller, 218 Ala. 674, 677, 120 So. 153, 154 (1928), as follows:
“ ‘As applied to the relation of landlord and tenant and liability for injury to the latter from defects in the premises, where there was an express agreement to repair, the case of Hart v. Coleman, 201 Ala. 345, 78 So. 201 [(1917)], L.R.A. 1918E, 213, declares the rule of this court. In that case the holding was that, where the promise of a landlord to a tenant by the month to repair the porch was under the latter’s threat to move unless such repairs were made, such promise was founded on a sufficient consideration; and the landlord, being notified or observing that the floor of considerable height was rotten in front of the door, failed after such promise to repair, and the tenant receiving injury by a fall through such insufficient and unsafe flooring was permitted to recover damages in an action ex contractu.’ ”
369 So.2d at 795.
Burdell asserts that he had the legal right to terminate the landlord-tenant relationship because of the defective condition (the contract of rental was by the week). We do not disagree. However, in order to recover damages under this contract claim, he also must present evidence that “he was prevented from exercising that right, and was induced to continue the relationship by the promise of the landlord to repair.” Hart v. Coleman, 201 Ala. 345, 78 So. 201 (1917).
A careful review of the record of this case shows that Burdell went to Carpentier and told him that he had a problem with a leak from the commode. Carpentier allegedly responded that he would take a look at it and that he would get it repaired. The record is entirely devoid, however, of any testimony or other evidence suggesting that Burdell had threatened to move out of the trailer unless such repairs were made. Notice to terminate the lease was never given by Burdell, nor did he ever make any threats about giving such notice. To the contrary, Burdell admitted that he did not press Carpentier about the defective commode because he, himself, was not particularly concerned.
Rule 50(e), Ala.R.Civ.P., states, in part, as follows:
“The court may direct a verdict, or enter judgment in accordance with the motion for directed verdict, ... in accordance with the scintilla evidence rule.”
Thus, a question must go to the jury if the evidence, or any reasonable inference arising therefrom, furnishes even the smallest trace in support of the theory of *264 the complaint. Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). And the evidence must be viewed in a light most favorable to the non-moving party. Martin v. State Farm Mutual Automobile Insurance Co., 456 So.2d 62 (Ala.1984).
Having carefully reviewed the record and finding no evidence of consideration for the alleged promise to repair, we hold that the trial court did not err in directing a verdict for Carpentier on the contract count.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES, ADAMS and STEAGALL, JJ„ concur.