# McGowin Lumber & Export Co. *v.* R. J. & B. F. Camp Lumber Co.

## *Assumpsit.*

(Decided April 22, 1915.  68 South. 263.)

1. *Sales; Breach of Contract; Pleading.*—Where the complaint merely showed a proposal on the part of the defendant to purchase certain articles from plaintiff, and no acceptance by the plaintiff, it violated the rule that in declaring on contracts, the declaration must show a binding agreement between the parties and its violation.

2. *Contracts; Mutuality.*—To be binding, contracts must be obligatory upon both parties so that each may have an action upon it.

3. *Same; Meeting of Minds.*—There can be nō valid contract unless there is a meeting of minds upon the agreement.

4. *Same; Proposal; Effect.*—An unaccepted proposal does not constitute a contract.

5. *Sales; Validity; Indefiniteness.*—Where a lumber contract provided that the prices were f. o. b., f. a. s. vessel, it was indefinite and could not be enforced, the first expression, f. o. b., designating that the seller should bear the expenses of loading onto the vessel, while the next expression, f. a. s., denotes merely that the lumber should be placed within reach of the vessel's tackle.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by the R. J. & B. F. Camp Lumber Company against the McGowin Lumber & Export Company for breach of contract. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

STEVENS, McCORVEY & DEAN, for appellant.

GREGORY L. & H. T. SMITH, for appellee.

MAYFIELD, J.—Appellee sued appellant in assumpsit. The complaint on which the case was tried consisted of four counts, numbered from 2 to 5, inclusive.

Each count claimed damages for the breach of what is claimed to be a contract of sale of lumber.

(1) The only contract attempted to be set up in any one of the counts is a letter written by appellant to appellee, which, omitting the description of the lumber claimed to have been sold or contracted to be sold, is in words and figures, as follows:

"Mobile, Ala., March 1st, 1910.

"Dear Sirs: Please enter our order for [here follow quantities and specifications of the lumber desired]. Price: $15.50. To be shipped sixty (60) days. Terms: Cash less 2% 10 days. Prices are f. o. b., f. a. s. vessel Clarabelle.

"See that this is put on B/L.

"Mail invoice and bill of lading (in duplicate) to us as soon as shipped.

"Yours very truly,

"McGowin Lumber & Export Co., Inc.,

"W. H. Buck.

"To R. J. & B. F. Camp Lumber Co., White Springs, Fla.

"Order No. 'Aloft.' "

There was no attempt to allege the legal effect of the contract. Each count claimed damages as for the breach of a contract in writing, "in substance as follows," and then the letter is set out in hæc verba, with no reference to any other contract, and no allegation, supplementary or in the way of an innuendo, as to the effect or meaning of the letter. There is no allegation, nor attempted allegation, that plaintiff ever accepted the proposed offer of defendant to purchase, or that this letter was ever answered in writing or orally. Count 2 contained the additional allegation that defendant waived the stipulation in the letter that the delivery should be made within 60 days. Count 5 contained

the further allegation that: "Plaintiff further avers
that the defendant, after the execution of said contract,
wrote to the plaintiff on the 2d day of March, 1910, in
words and figures as follows: 'In regard to the time
of delivery would state that we put on the other sixty
days, and would like for you to advise us in about two
weeks' time whether you will get the cargo out within
that time; this for the purpose of chartering. We, of
course, would give you fifteen days longer, if necessary,
but must known in time, so that we can effect a char-
ter.'

"Plaintiff further avers that on the 7th day of March,
1910, defendant wrote to the plaintiff as follows: 'In
regard to chartering, we wish you would—say about
20th to 25th of this month—let us know what you then
estimate will be the right time for a vessel to report.
Sailing vessels are getting very hard to charter, and
we would like as much notice as possible, but in this
instance we do not want vessel to report until you are
well satisfied that you will have the order complete.'"

Each count contained appropriate allegations as
for breaches, in that the defendant refused to furnish
a vessel, or refused or failed to accept the lumber claim-
ed to have been contracted to be bought. There were
demurrers to each count, and, the same being over-
ruled, the defendant filed eight pleas, seven of which
were special. To these special pleas plaintiff demurred,
and, the demurrers being overruled, issue was joined.
The trial resulted in verdict and judgment for the plain-
tiff. From the judgment defendant prosecutes this ap-
peal, assigning for error the rulings on the pleadings
above set forth. There is no bill of exceptions, and the
appeal is on the record proper.

The trial court was in error in overruling the defend-
ant's demurrers. Each count of the complaint was

bad, and the demurrer pointed out one or more defects as to each count. In the present state of the record it is unnecessary for us to decide whether or not any one of the counts would support the judgment rendered; the defect was pointed out by the demurerr, and the trial court should have sustained the demurrer.

Each count is palpably defective in that it declares as for the breach of a contract, and yet fails to show that any contract existed between the parties. The very most that any one of the counts shows is that defendand wrote a letter or letters to plaintiff proposing or offering to purchase a certain quantity of lumber, on certain terms, or conditions, at certain times, but there is no allegation or attempted allegation that plaintiff ever answered the letters either orally or in writing. There is no allegation whatever that the plaintiff ever accepted the proposed offer, or ever did any act indicating an intention to accept or to bind itself to do what the defendant's letters proposed for it to do. The allegation that plaintiff was ready, willing, and able to have the lumber ready for delivery is in no sense an allegation of acceptance. If the plaintiff accepted the offer, it was its duty to notify the defendant of the fact, by some word, act, or deed. There is no allegation that the plaintiff ever did any act, or said any word, indicative of acceptance, or agreeing to bind itself by the terms offered in defendant's letters, or by any other contract. The utmost that any count shows is that defendant wrote a letter proposing to buy lumber from plaintiff, but failed or refused to do or perform the promise. This is clearly not sufficient to support a cause of action. It shows no contract or contractual relations between the parties. The rule of pleading in such cases is well stated by Justice Dargan in *Jones v. Powell*, 15 Ala. 824: "In declaring on con-

tracts, the declaration must show a binding agreement between the parties, which has been violated. If a valid contract is shown, and the consideration is concurrent, that is, if the promise of the one is the consideration of the promise of the other to do a certain thing at the same time, the plaintiff must aver a readiness and willingness on his part to perform the promise.—Chit. Plead. 296; *Porter v. Rose,* 12 Johns. [N. Y.] 209 [7 Am. Dec. 306]; [*Pennsylvania, D. & M. Steam Nav. Co. v. Dandridge*] 8 Gill & J. [Md.] 248 [29 Am. Dec. 543]."

The rule is thus stated in Cyc. (volume 9, p. 712): "In declaring on a contract, the declaration, complaint, or petition must show a binding agreement between the parties, and must state facts to show that the defendant is under a legal obligation or duty to the plaintiff. An averment that by reason of a contract it became the duty of the defendant to do certain acts is insufficient. The facts must be stated from which the duty arose."

The following propositions of law, applicable to the letters claimed in this case to constitute a contract, are well settled by the decisions of this court, and show that such letters, of themselves, did not constitute a contract:

(2) It is indispensable to the validity of a contract that it should be mutually obligatory upon both parties, or it will be binding upon neither.—*Bank v. Steele,* 10 Ala. 925; *Wilks v. G. P. R. R.,* 79 Ala. 180; *Evans' Case,* 78 Ala. 345; *Borst v. Simpson,* 90 Ala. 373, 7 South. 814.

(3) All contracts founded upon mutual promises between persons of full age must be obligatory upon both parties, so that each may have an action upon it, or neither will be bound. The whole doctrine rests, though,

mainly upon the absence of a consideration to support the promise.—*Evans v. C., S. & M. Ry.,* 78 Ala. 341.

In order to constitute a contract, there must be a concurrence of minds of both parties as to the same thing.—*Chambliss v. Smith,* 30 Ala. 366; *Sanford v. Howard,* 29 Ala. 684, 68 Am. Dec. 101; *Hodges v. Sublett,* 91 Ala. 588, 8 South. 800; *Hammond v. Westchester,* 82 Ala. 470, 2 South. 892; *Smith v. Ingram,* 90 Ala. 529, 8 South. 144; *Linn v. McLean,* 80 Ala. 360.

(4) A mere proposal or expression of a desire to do a certain thing does not constitute a contract.—*Lakeside Co. v. Dromgoole,* 89 Ala. 505, 7 South. 144; *Kenan v. Holloway,* 16 Ala. 53, 50 Am. Dec. 162. Thus, A. having proposed to exchange horses with B., and pay a sum certain as difference, which proposition B. reserved the privilege of determining upon by a certain day, and before that day A. gave notice to B. that he would not make the exchange, it was held thereby the proposition was withdrawn, and that B. had no cause of action against A. for the recovery of the difference offered to be paid.—*Eskridge v. Glover,* 5 Stew. & P. 264, 26 Am. Dec. 344.

(5) If the letter in question could be said to constitute a contract, or if it should be aided by other allegations showing an acceptance, it is still uncertain and indefinite in its terms. The letter states that the prices to be paid are f. o. b., f. a. s. It is difficult to understand what is meant by this. It is on its face inconsistent "F. o. b." implies that the seller must incur the expense of loading the lumber onto the vessel; while "f. a. s." implies that the seller is only to place the cargo alongside of the vessel, within reach of her tackle. Which of these conditions must control? If only one must be complied with, which one? Is there any option to comply with the one or the other? If so, which

one? and who has the option, the vendor or the purchaser?

The complaint is wholly silent as to these matters. How could the damages be ascertained in this case, without determining which one of these provisions was to be complied with by the plaintiff? Does not such a provision render the contract—if such it can be called —too indefinite and uncertain to support a judgment for anything more than nominal damages? Correspondence agreements and arrangements between parties more definite and certain than this, even after partial execution, have been held too uncertain to support a judgment for damages. See *Christie, Lowe & Heyworth v. Patton*, 148 Ala. 324, 42 South. 614, and cases there cited and reviewed.

Each of the defendant's special pleas seems to state a good defense to any possible cause of action attempted to be stated in the complaint; but we do not now rule on the demurrer thereto, as neither count, as now framed, is good, and, when amended so as to state a good cause of action, the general issue might then raise most of the questions attempted to be set up in these special pleas.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.